Filed 9/15/25  P. v. Wright CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVEN LAWRENCE WRIGHT,<br><br>    Defendant and Appellant. | 2d Crim. No. B337572<br>(Super. Ct. No. GA082955)<br>(Los Angeles County) |

Steven Lawrence Wright appeals the order denying his Penal Code section 1172.6 petition to vacate his 2016 first degree murder conviction and to be resentenced.[1]  A jury found true an allegation that a principal in the commission of the offense had intentionally discharged a firearm and had caused death within the meaning of section 12022.53, subdivisions (d) and (e)(1).  The trial court found true one prior strike within the meaning of California's "Three Strikes" law.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  Appellant was sentenced to prison for an

---

[1] All statutory references are to the Penal Code.

aggregate term of 75 years to life. We upheld the murder conviction in an unpublished opinion. (*People v. Wright et al.* (Dec. 19, 2018, B281115) (*Wright I*).)

Appellant's section 1172.6 petition was denied at the prima facie stage of the proceedings. On appeal, his appointed counsel found no arguable issues and filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Appellant personally filed a supplemental brief contending that he had made a prima facie showing because the prosecutor had erroneously informed the jury that it could convict him of murder under the natural and probable consequences doctrine. We affirm.

*No Appeal as to Appellant's Attempted Murder Conviction*

The information charged appellant with the murder of Donnell Taylor and the attempted murder of another person on a different occasion. Appellant was convicted of both offenses. His section 1172.6 petition sought relief, and the trial court denied relief, as to both convictions. Appellant's notice of appeal states that he "appeals the denial of his Petition" without mentioning the murder or attempted murder conviction. But his supplemental brief discusses only the murder conviction. Accordingly, if appellant originally intended to appeal from the order denying his petition as to both convictions, we assume that he has abandoned his appeal as to the attempted murder conviction.

For the attempted murder plus enhancements, appellant was sentenced to a second-strike term of 55 years to life. The 75-year-to-life term for the murder was ordered to be served consecutively to the 55-year-to-life term. Thus, appellant's

2

aggregate prison sentence for both the murder and attempted murder is 130 years to life.

*Facts*

The facts are taken almost verbatim from pages 3-5 of the slip opinion in *Wright I*:

Donnell Taylor, whose nickname was "Touche," was a member of the Pasadena Denver Lane Bloods criminal street gang.  At about 8:00 p.m. on January 19, 2011, Taylor was sitting on steps leading to the front porch of a residence on Summit Avenue in Pasadena.  A man wearing a black "hoodie jacket with fur around it" approached Taylor.  The hood "was on his head." The man asked Taylor, "'What's up, blood.'"  Taylor said his name was, "Touche."  The man "pulled out [a] gun and just said, 'yeah' and started shooting" at Taylor.  After the shooting, the man "walked off."  Taylor was shot four times.  A gunshot wound to the heart was fatal.

William Fishburn saw the shooter.  In a 911 call, he described the shooter as a black male, approximately 25 to 30 years of age, wearing a black hooded jacket with "fur around the hood."  In court Fishburn identified appellant as the shooter. However, in a later court proceeding he identified appellant's codefendant, Vernon E. Fisher, Jr., as the shooter.

Appellant is a member of the Altadena Blocc Crips (ABC) criminal street gang.  ABC and Taylor's gang, the Pasadena Denver Lane Bloods, are rivals.

Hinal Maganlal had a dating relationship with appellant. At his direction, she drove her vehicle to get the firearm that was apparently used to shoot Taylor.  Before the shooting, Maganlal heard codefendant Fisher say to appellant, "'That nigga not even down there.  Let's go.'"  "'We got to go get him, Cuz.'"  Fisher

3

referred to the person they had to get as "that nigga Donnell." Donnell is Taylor's first name. Maganlal said that appellant was wearing "[h]is hoodie jacket."

After the shooting, appellant gave Maganlal the firearm that she had transported to him earlier that day. He told her "to take it back in the morning." Appellant said, "'Somebody in the hood died tonight.'" He instructed Maganlal that, if anyone asked about his whereabouts that night, she was to say that he had been with her.

Shortly after the shooting, Maganlal became a paid police informant. She provided information about appellant's actions on the day of the shooting. In March 2011, about two months after the shooting, Maganlal recorded portions of her conversations with appellant. During one conversation, he denied participating in the shooting. Maganlal said she needed to know what had happened. Appellant replied: "You don't need to know nothing . . . . The less you know, the better." "[Y]ou don't know shit. And that's what you say." Maganlal asked, "Did you make sure you took everything?" Appellant responded, "Man you don't need to - - of course."

Brenden Jackson is an associate of ABC. Jackson told the police that, at about 8:00 p.m. on the night of the shooting, he was with Maganlal when she received a call from appellant saying she should "go check [Woodbury] and see if somebody . . . got shot. [¶] [¶] Go see if the ambulance is down there." The shooting occurred at about 8:00 p.m. at 1797 North Summit Avenue in Pasadena. We take judicial notice that North Summit Avenue and East Woodbury Road intersect, and 1797 North Summit Avenue is approximately two blocks away from the intersection. (Evid. Code, §§ 459, 452, subd. (h).) Maganlal

4

testified that appellant had phoned and told her "to go check out the scene" at "Woodbury and Summit."

*Procedure to Be Followed When*
*Counsel Files a Delgadillo Brief*

"On an appeal from the denial of a section 1172.6 petition, [our Supreme Court] . . . prescribe[d] the following framework. When appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief . . . ." (*Delgadillo, supra,* 14 Cal.5th at pp. 231-232.)

"If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Delgadillo, supra,* 14 Cal.5th at p. 232.)

*Standard of Review*

"A court's decision to deny a resentencing petition at the prima facie stage "'is a purely legal conclusion, which we review de novo."'" (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 (*Lovejoy*).)

*Appellant Failed to Make a Prima Facie Case for Relief*

"When a trial court reviews a petition for resentencing under section 1172.6, it must first decide if the petitioner has established a prima facie case for relief under the statute." (*Lovejoy, supra,* 101 Cal.App.5th at p. 864; see also § 1172.6, subd. (c).) In his supplemental brief, appellant claims he made a

5

prima facie showing because the prosecutor misstated the law of conspiracy during closing argument at his jury trial. The prosecutor allegedly "told the jury they could find [appellant] guilty if he was the actual killer, or *he committed an overt act* of which he could have reasonably foreseen that the natural and probable consequences would be death." (Italics added.) Appellant asserts that the prosecutor's "argument clearly infers the invocation of the natural and probable consequences doctrine . . . ." Section 1172.6 provides relief to a person "convicted of . . . murder under the natural and probable consequences doctrine . . . ." (*Id.*, subd. (a).)

The trial court instructed the jury on conspiracy as an alternative, uncharged theory of liability for murder. In his closing argument the prosecutor referred to the "natural and probable consequence[s] of the conspiracy," not of an overt act committed by appellant. The prosecutor said, "'A member of the conspiracy is criminally responsible for any act of any member if the act is done to further the conspiracy and that act is a natural and probable consequence of the conspiracy.'" The prosecutor's statement is similar to current CALCRIM No. 417: "A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy."

"[T]he natural and probable consequences instruction as applied to a conspiracy (CALCRIM No. 417) is problematic in this context [i.e., the context of whether a section 1172.6 petitioner has made a prima facie case for relief] only where a defendant is convicted of murder or attempted murder based on a conspiracy to commit 'a lesser crime that resulted in murder.'" (*Lovejoy*,

6

*supra*, 101 Cal.App.5th at pp. 867-868.)  If the jury here had relied on a conspiracy theory to convict appellant of murder, the conspiracy would have been based on an agreement to commit murder.  The trial court instructed the jury: "'To prove [that] [appellant] was a member of the conspiracy in this case, the People must prove that: [¶]  '1. [Appellant] intended to agree and did agree with the other defendant [Fisher] or Hinal Maganlal to commit murder; [¶]  '2. At the time of the agreement, [appellant] and one or more of the other alleged members of the conspiracy intended that one or more of them would commit murder . . . .'" "We presume the jury followed [this] instruction." (*People v. Najera* (2006) 138 Cal.App.4th 212, 224; see also *People v. Cortez* (2016) 63 Cal.4th 101, 131-132.)  In his supplemental brief appellant acknowledges, "[T]he Court stated in his [*sic*] Jury Instructions that the jury was to follow his instructions and ignore any arguments by counsel that might conflict . . . ."

Accordingly, appellant failed to make a prima facie showing that his murder conviction was based on the natural and probable consequences doctrine.  *"[T]he target offense was first degree murder. . . .*  '[C]onspiracy to commit murder requires a finding of intent to kill.'" (*People v. Medrano* (2021) 68 Cal.App.5th 177, 182–183.)

"In short, because the jury necessarily found that [appellant] personally possessed an intent to kill as part of a conspiracy to commit murder, [he] is ineligible for relief under section 1172.6." (*Lovejoy, supra*, 101 Cal.App.5th at p. 871.)

*Disposition*

The order denying appellant's section 1172.6 petition is affirmed.

7

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


CODY, J.

Michael D. Carter, Judge

Superior Court County of Los Angeles

_____

Jennifer Peabody, Acting Executive Director, David Andreasen, Staff Attorney, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.